# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICHAEL S. OWLFEATHER-GORBEY,

    Petitioner,

    v.

    Civil Action No.:  RDB-19-2394

WARDEN, FCI CUMBERLAND

    Respondent.

## MEMORANDUM OPINION

Pending in this matter are Petitioner Michael OwlFeather-Gorbey's Motion for Leave to Proceed in Forma Pauperis (ECF 2) and Respondent's Motion to Dismiss or for Summary Judgment (ECF 6).  Respondent's dispositive motion is opposed by Gorbey.  ECF 8.  No hearing is required for the disposition of the matters pending.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons stated below, Respondent's motion, construed as one seeking summary judgment, shall be granted; the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 shall be dismissed and Gorbey's Motion for Leave to Proceed in Forma Pauperis will be granted.

## Background

### I.    Gorbey's Claims

Gorbey, an inmate committed to the custody of the Federal Bureau of Prisons ("BOP"), filed this petition challenging the validity of a disciplinary proceeding that occurred during his confinement to Federal Correctional Institution Cumberland, Maryland ("FCI Cumberland").  ECF 1.  Gorbey was charged with a Code 113 offense, possession of narcotics, on January 10, 2019.  He claims his due process and equal protection rights were violated because the disciplinary process at FCI Cumberland is unconstitutional.  *Id*. at 6.  He explains that "[r]eporting &

significantly involved staff are conducting investigation procedures" and alleges there are "unreliabilities (sic) in FCI Cum[berland] drug NIK field tests." *Id*. at 7. According to Gorbey the tests are so unreliable that the guilty finding for the rule violation is not supported by "some evidence" and he claims that charging a Code 113 for possession of K-2 denies equal protection because other drug-related offenses are not punished the same way. *Id*. He also cites a "lengthy administrative detention" and an unconstitutional delay in issuing "DHO Reports" as grounds for challenging the guilty finding and subsequent penalties imposed. *Id*.

Gorbey also asserts that pay restriction to $5.25 for a period of one-year "is arbitrary and unconstitutional" because it exceeds the sanctions imposed by the "DHO" by six months. ECF 1 at 7. He adds that any additional points added to his classification score to "try to transfer me" is also arbitrary and exceeds the sanctions imposed. *Id*.

Gorbey challenges the impartiality of the hearing officer and the Regional Appeal Staff and claims they violated his rights to due process and equal protection. According to Gorbey "DHO D. Huff is not impartial" because he "spoke with several bias[ed] staff" including Lt. Eirich, Lt. Felix, Officer Fauston and "other staff" before conducting the hearing. ECF 1 at 7. He claims that Mid-Atlantic Regional Counsel Matthew W. Mellady did not impartially consider his appeals, because Gorbey had filed multiple complaints and civil actions against Mellady. *Id*. He adds that Ian Conners from the Central Office of the BOP is also not impartial because Gorbey has sued him. *Id*. He states that their decisions regarding his disciplinary hearing and appeals amount to retaliation for the complaints he filed against them.

As relief, Gorbey seeks expungement of the charges with all sanctions reversed. ECF 1 at 8. He also seeks an Order requiring the disciplinary process at FCI Cumberland to be revised to be "more constitutional to prevent abuses of administrative detention for more timely issuings (sic)

of DHO Reports to preserve inmate rights to appeal" as well as a prohibition against reporting staff from investigating charges. *Id.*

## II.     Respondent's Response

Respondent provides a factual narrative regarding the Code 113 violation and explains that on January 13, 2019 at approximately 8:40 a.m., Officer Weaver noticed Gorbey in his cell holding a milk carton in his hand which was shaking rapidly. ECF 6-2 at 12.[1] When Weaver opened the cell door to check on Gorbey, he found Gorbey to be very confused and disoriented indicating to Weaver that Gorbey may have been under the influence. *Id.* Gorbey stumbled backwards, fell to the floor, and laid on his back. *Id.* In response Weaver requested Health Services to report to Gorbey's cell and Registered Nurse Todd responded to the area along with BOP staff member Thorn. *Id.* At approximately 9:00 a.m., Gorbey was escorted to Health Services. *Id.*

When Todd examined Gorbey in the Health Services Unit he noticed that Gorbey appeared stuporous and had dilated eyes and slurred speech. ECF 6-2 at 16-19. When asked about his condition Gorbey maintained that his blood sugar had dropped; Gorbey's blood sugar was checked and measured 104. *Id.* at 17. There is no mention of hypoglycemia in Gorbey's medical record. *Id.* Gorbey denied the use of any illicit substances and also offered that perhaps his glaucoma could be the cause of his erratic behavior. *Id.* Todd informed Gorbey that glaucoma does not cause the symptoms he was exhibiting. Gorbey could not recall who the president of the United States was; his pulse was 106; and his blood pressure was elevated. *Id.* After a review of Gorbey's medical records and finding no condition or prescribed medication that could explain his symptoms, Todd assessed Gorbey as having used or overdosed on drugs. *Id.*

---

[1]     Page cites reflect the page numbers assigned by the Court's electronic docket.

After Todd's assessment, Thorn ordered Gorbey to remove all items from his pockets and to submit to a visual search. ECF 6-2 at 10 (Incident Report). When he emptied his pockets, Gorbey removed a homemade pipe from his pocket and refused to be visually searched by Thorn. Gorbey asked to speak with Lt. Eirich, who was called to Health Services at approximately 9:30 a.m. Eirich repeated the order for Gorbey to submit to the search, but he again refused. *Id.* Eirich also noticed Gorbey was slurring his words and asked Gorbey if he had ingested narcotics. *Id.* Gorbey again denied taking anything and claimed his blood sugar was low. *Id.* When RN Todd was consulted about Gorbey's claim, he replied that Gorbey's blood sugar was not low, rather it was a little high. *Id.* When Eirich again ordered Gorbey to submit to a visual search, Gorbey complied. *Id.*

Gorbey removed a brace from his left ankle and Thorn observed a small folded piece of paper stuck to the thermal pants Gorbey was wearing. Inside the white paper was a small square of black paper that appeared to be soaked in an unknown substance. *Id.* Thorn handed the paper to Eirich. *Id.* When the paper was recovered Gorbey threatened Eirich with legal action, stating "I don't think you know who you're dealing with. There is a lot going on in the BOP you're not aware of. You might want to rethink about locking me up." *Id.* at 13. When Eirich asked Gorbey to clarify what he meant, Gorbey said he was going to write up all of the staff present and began asking all of them for their names. *Id.*

Gorbey was escorted to the Segregated Housing Unit ("SHU"). ECF 6-2 at 10 Eirich then tested the substance on the paper found on Gorbey's person with a "NIK test kit A" pursuant to BOP Program Statement 6060.08,[2] which rendered a positive result for opium alkaloids. *Id.* at 13. A second test using a "NIK test kit K" rendered a positive result for heroin. *Id.*

---

[2]    BOP Program Statement 6060.08 provides in relevant part that:

Based on all of the above information, Gorbey was charged with possession of narcotics under Code 113 and refusing to obey an order under Code 307. ECF 6-2 at 10. Thorn wrote the incident report at 11:00 a.m. that day which included a description of the incident and the NIK testing performed by Eirich. *Id*. The incident report was forwarded to Lt. Carr for investigation which began at 1:00 p.m. that day.

Carr gave Gorbey a copy of the incident report and took Gorbey's statement. Gorbey maintained that he found the paper on the compound and was going to turn it in to his work supervisor. ECF 6-2 at 6, § III.B. Carr also reviewed the photographs taken by Eirich of the homemade pipe and the paper found on Gorbey; the statements written by Weaver and Eirich; and Todd's medical assessment. ECF 6-2 at 11-17. Based on the incident report as well as the supporting documentation, Carr concluded that Gorbey's claim was not true. *Id*. at 11.

Under BOP Program Statement § 541.7 (Unit Discipline Committee), if an inmate is charged with a "Greatest or High severity prohibited act . . . the UDC will automatically refer the incident report to the D[iscipline] H[earing] O[fficer] for further review." A Code 113 offense is categorized as a "Greatest Severity" prohibited act. BOP Prog. Statement 5270.09 (Table 1). Gorbey's Incident Report was referred to Discipline Hearing Officer ("DHO") Darrell Huff for a hearing.

---

NARCOTIC IDENTIFICATION KITS. Each Captain will ensure the institution maintains a supply of Narcotic Identification Kits (purchased through the Federal Supply Schedule) to determine the identity of unknown substances.

All lieutenants will be proficient in using the Narcotic Identification Kit and ordinarily are responsible for testing unknown substances.

While identification of such substances may be useful for various security purposes, it is often particularly important in the investigation of incident reports and may be important in referring incidents to the Federal Bureau of Investigation.

PS 6060. 08, CN-1, p. 8, ¶11 (March 8, 2001), *see* https://www.bop.gov

A discipline hearing was held on March 20, 2019 and the DHO's report was issued two days later.  ECF 6-2 at 6-9.  DHO Huff's report, which concluded that Gorbey was guilty of the Code 113 offense, advised Gorbey of the following:

> Your witness, Maintenance Worker Foreman, J. Gank appeared and provided testimony that you have brought contraband to him in the past, he brought shank blanks to me that was found on the compound and if he were to find contraband I have no reason to believe he wouldn't bring it to me because he has in the past.
>
> Your witness, Chaplin E. Weaver appeared and provided testimony that use of a ceremonial religious pipe would be limited to Religious services but they can be maintained in the inmate's possession and it would have to be purchased and be BOP approved.
>
> In making this decision the DHO gave the greater weight of evidence to Officer Thorn's written account that during a visual search of you and after the removal of an ankle bracelet from your left ankle, a small piece of paper stuck to the thermal bottoms near the inner part of your left ankle.  Upon opening the paper a small strip of paper was discovered approximately 3/8th of an inch in length and black in color.  Lieutenant Eirich performed the test . . . of the strip of paper utilizing NIK test kit A resulting in a positive test for opium alkaloid (pinkish purple color[)].  Lieutenant Eirich also tested the strip of paper with NIK test kit K which resulted in a positive test for Heroin, than to your claim that you discovered it on the ground, you stuck it in your sock and was going to give it to your boss.  This decision was based upon your own admission that the strip of paper was in your possession, the black strip of paper was discovered on your possession, and the positive test results for heroin received from the black strip of paper with the Narcotic Identification Kit testing sequence of test kit A and K.
>
> The DHO considered testimony provided by your witnesses.  However, discovered neither witness had any first-hand knowledge of the incident.  The DHO found neither witness to have any knowledge or information to assist in your defense and determined the information provided to be irrelevant.
>
> Your contention that you found it on the ground while working on the compound, placing it in your sock to later give to your boss was considered but insufficient to excuse you from the offense. . . . If in fact you were going to provide it [to] staff after retrieval as you claim, you could have simply placed it in your pocket or maintained it in your hand, however, since you went to the length to conceal it in your sock, the DHO found your explanation to be nothing more than an attempt to distance yourself from the consequences of your misconduct.

> Furthermore, your documentary evidence as well as your verbal objections that no lab test was conducted, the test provided two different results and that an object that is black or purple in color tested positive was considered but insufficient to excuse you from the offense. . . . You do not provide, nor does the DHO find, any credible evidence that the drug test kits utilized do not work properly. Additionally, your due process right were not violated, and your procedural concerns you raised were well within the guidelines established by policy.

ECF 6-2 at 8.

Gorbey was sanctioned with 41 days disallowance of good conduct time; 30 days of disciplinary segregation which was suspended to give Gorbey "an opportunity to correct his behavior," 180 days loss of commissary, and 180 days loss of phone. *Id*. at 9. The DHO report was provided to Gorbey on April 11, 2019, and Gorbey was released from SHU that day. *Id*. Conviction of a Code 113 requires performance pay to be set at $5.25 per month pursuant to Program Statement 5251.06.[3] ECF 6-3 at 2 (pay record).

DHO Darrell Huff provides a declaration indicating in part that his first involvement with the Incident Report charging Gorbey with a Code 113 was when he conducted the hearing on March 20, 2019. ECF 6-2 at 3, ¶8. Huff explains that as "part of the DHO hearing process, I review the incident reports, decide which witnesses will be called, take and record testimony relevant to the charges, obtain, review and weigh evidence, and determine whether or not the allegations of misconduct are supported by the evidence submitted." *Id*. at 2, ¶3. In his role as

---

[3]      BOP Program Statement 5251.06 states in relevant part that:

> Inmates receiving performance pay who are found through the disciplinary process (part 541 of this subchapter) to have committed a level 100 or 200 series drug- or alcohol-related prohibited act will automatically have their performance pay reduced to maintenance pay level and will be removed from any assigned work detail outside the secure perimeter of the institution. This reduction to maintenance pay level, and removal from assigned work detail outside the secure perimeter of the institution, will ordinarily remain in effect for one year, unless otherwise authorized by the Warden.

DHO, Huff states that he did not charge Gorbey with the violation, place him SHU pending the discipline hearing, nor did he keep Gorbey in SHU pending the discipline hearing. *Id*. at 3, ¶7.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

I.      **Due Process**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).  In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker.  *See Wolff*, 418 U.S. at 564-66, 592.  There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel.  *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).  As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied.  *See Baxter*, 425 U.S. at 322, n.5.  Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence."  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*, 945 F. 3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.")

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact.  *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).  The findings will only be

disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F3d at 171-72.  As long as there is some evidence in the record to support factual findings in a disciplinary proceeding, a federal court will not review the accuracy of those findings.

The evidence relied upon by DHO Huff to arrive at a finding of guilt was well beyond the quantum of evidence required to satisfy the "some evidence" standard announced in *Hill*. Gorbey's explanation of how he came to be in possession of heroin was rejected on a credibility determination which is not subject to review by this Court.  Further his protests regarding the accuracy[4] of the tests performed on the substance found in his possession were also considered by DHO Huff and rejected.  His claim that he was entitled to a separate lab test to confirm the "field" tests conducted is without merit.  Prison discipline hearings, as noted, are not criminal trials.  There is "no authority for the proposition that due process is a technology forcing concept rendering it incumbent upon the Government to employ the latest in scientific technology."  *Thompson v. Hall*, 883 F.2d 70, 1989 WL 90668 *2 (4th Cir. 1989) (noting that test results, like other reliable forms of evidence such as eye witness testimony, need not be 100% accurate in prison disciplinary hearings).

Gorbey's assertion that Lt. Eirich should not have been the one to perform the NIK tests because he was involved in the incident and Lt. Carr was listed as the investigating officer, is based on BOP Policy Statement § 541.5(b) requiring in part that the Investigating Officer "may not be

---

[4]    In his Opposition Response Gorbey asserts that Respondent's counsel is improperly offering "expert testimony" regarding the results of the two NIK tests.  ECF 8 at 4-5.  His argument is without merit.  The information included in the Memorandum – that opium and heroin are not separate drugs – is information easily verifiable from trusted sources.  Pursuant to Fed. R. Evid. 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* https://www.drugabuse.gov/publications/opioid-facts-teens/opioids-heroin ("Heroin is made from morphine, a natural substance taken from the seed pod of opium poppy plants . . .") (last viewed March 17, 2020).

the employee reporting the incident or otherwise be involved in the incident." ECF 8 (Opposition Response). The same Policy Statement also requires that the investigation take place *after* the incident report is issued and empowers the investigator to informally resolve the matter in cases where the prohibited acts are not in the Greatest or High severity level categories. The positive NIK tests were one part of the basis for issuing the Incident Report charging Gorbey with possession of narcotics. Similarly, the statements of staff members who observed Gorbey's altered state and witnessed the visual search also formed part of the basis for the Incident Report. All of the matters underlying the Incident Report, including the NIK tests, were investigated by Lt. Carr, who was not a part of the search or the discovery of Gorbey in his cell in an altered state of consciousness. Eirich's performance of the NIK tests did not violate BOP Policy, nor did it infringe on Gorbey's right to due process.

Gorbey's argument that "alleged substances" are deliberately tested in a manner to prevent preservation of the evidence so that a subsequent lab test could be performed and exonerate the inmate charged with possession of a narcotic fails to include any evidence to support such a claim. ECF 8 at 9. Gorbey relies on BOP Policy 541.5 regarding exculpatory evidence, such as video or audio surveillance, which "the investigator must make every effort to review and preserve" to support his position that any possible exculpatory evidence must be preserved. In this instance, the substance found on Gorbey was extremely small and it was used to conduct the only tests required for the Incident Report. The first test alone provided inculpatory evidence against Gorbey; there is no indication outside of Gorbey's unfounded assertions, that a lab test would have proved the substance was not an opium derivative such as heroin. In addition, the video or audio surveillance evidence referenced in the policy statement is the type of evidence particularly likely to prove useful to a prison inmate in a disciplinary hearing as it may counter a prison official's

version of events, or assist the accused inmate in identifying relevant evidence or witnesses. *See Lennear v. Wilson*, 937 F.3d 257, 269-70 (4th Cir. 2019). Gorbey is demanding not just the preservation of evidence, but additional evidence produced at the expense of the prison in the hopes it may refute the two test results that established the substance was heroin. Preservation of existing video and audio surveillance requires no additional expense or extra step; it requires only preserving that which already exists. Due process does not require exhaustion of all conceivable avenues that may exonerate an inmate of a rule violation.

## II.    Equal Protection

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). In cases where no suspect criterion, such as race is involved, the proper inquiry is whether the statute or regulation serves a legitimate state interest and whether the challenged classification is rationally related to it. *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989).

Gorbey asserts that inmates charged with a Code 112 (use of a prohibited substance) and inmates charged with a Code 113 (possession of a prohibited substance) are "similarly situated" but are not treated equally. ECF 8 at 7. He argues that if a urinalysis performed on site renders a positive result, it is then sent to the lab for a confirming test; unlike his case where no lab test was performed on the substance found. *Id*. Further, he argues that inmates whose urinalysis renders a positive result at the prison are not placed in SHU or subjected to any disciplinary action until the lab results are returned and indicate a positive result. *Id*. Gorbey states that the intent of both rules is to detect illegal substances and it is therefore discriminatory to "treat or punish one more serious[ly] with less due process protections than the other." *Id*.

The equal protection claim fails. The two rule violations are not the same and therefore inmates who charged with Code 112 violations are not similarly situated to those charged with Code 113 violations. The use of a prohibited substance includes past, undetected use of prohibited substances that may no longer create a security hazard to the prison population and necessitates the elimination of possible false positives caused by prescribed medications that are not prohibited. Whereas possession of a prohibited substance presents the potential for future harm because the substance has not yet been consumed and may include possession with an intent to sell or distribute the substance. That difference alone defeats Gorbey's equal protection claim; any difference in the way the tests are performed are not the result of improper discriminatory animus, but rather are rooted in the differences between the two offenses.

## III.    Retaliation

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). A causal connection between First Amendment activity and the alleged retaliatory action may be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *See Constantine*, 411 F.3d at 501.

Gorbey's retaliation claims rely solely on adverse actions against him and his summary assertion that he filed "claims" against those involved in the discipline proceedings and review of his appeal. Where, as here, there is no impairment of Gorbey's protected rights, "there is no need for the protection provided by a cause of action for retaliation" because no adversity has been demonstrated. *ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Were this Court to allow Gorbey's retaliation claims to prevail, it would mean indorsing his view that any BOP staff member against whom he has filed a complaint would necessarily be excluded from performing their job functions as they relate to Gorbey's confinement. In short, there is neither adversity nor a causal link between Gorbey's claimed exercise of his constitutional rights and his unsuccessful attempts to defeat the disciplinary charges against him.

## IV. Segregation and Transfer

In his claim that his confinement to SHU prior to his disciplinary hearing was not proper, Gorbey faults DHO Huff for confining him in detention for 75 days.[5] ECF 8 at 10. He maintains that this claim is cognizable in the context of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 because he was prohibited from challenging his confinement to SHU prior to the hearing before DHO Huff. *Id.* In addition, Gorbey complains that as a result of the discipline hearing, his classification points were increased for the purpose of causing his transfer to another prison.

A § 2241 petition is appropriate for challenges to the fact or length of confinement, but not the conditions of confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 499–500 (1973); *Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning

---

[5] DHO Huff denies participating in the decision to assign Gorbey to SHU. Gorbey offers no evidence to indicate that Huff placed him in SHU or had anything to do with keeping him there.

on circumstances of confinement may be presented in a [different] action."). Even if Gorbey's claim had merit, it would have no effect on the fact or length of his confinement and may not be raised in the context of a 2241 petition.

Gorbey's attempts to raise this claim in this Court in an earlier 2241 petition prior to the discipline hearing were unsuccessful because he had not yet exhausted administrative remedies for purposes of reviewing the validity of the disciplinary proceedings. *See Gorbey v. Warden*, Civ. Action RDB-19-715 (D. Md. 2019) at ECF 4 (Memorandum Opinion), *affirmed by Gorbey v. Warden*, No. 19-6507 (4th Cir. Nov. 6, 2019). This Court did not reach any of the claims raised in the earlier petition because it was prematurely filed. Further, as a civil rights claim filed pursuant to 42 U.S.C. § 1983, Gorbey could not raise such a claim without first paying the full civil filing fee because it is not a claim raising an imminent danger to his safety. Gorbey has acquired more than three "strikes"[6] under the Prison Litigation Reform Act and is barred from proceeding in forma pauperis in a civil rights action that does not concern an imminent threat of harm.

In any event, his claims are meritless. Assignment to segregated housing and transfers to a different prison, without more, do not involve protected liberty interests such that due process protections apply. Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005). Here, Gorbey's assignment to SHU was reviewed periodically

---

[6]       *See Gorbey v. U.S.A., et al.*, Civ. Action 1:08cv332 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv334 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv339 (D. Md. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 2:09cv313 (S.D. W.Va. 2009), *Gorbey v. U.S.A., et al.*, 1:09cv262 (D. D.C. 2009), *Gorbey v. U.S.A., et al.*, Civil Action 2:08cv121 (N.D. W.Va. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv649 (D. D.C. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv650 (D. D.C. 2008), *Gorbey v. District of Columbia, et al.*, Civil Action 1:09cv261 (D. D.C. 2009), *Gorbey v. District of Columbia*, Civil Action 1:10cv1751 (D. D.C. 2010), *Gorbey v. State of Virginia, et al.*, Civil Action 2:11cv164 (E.D. Va. 2011).

by BOP staff pursuant to applicable policy and he has failed to allege any facts or evidence that suggest his confinement to SHU or his subsequent transfer to another prison amounted to the imposition of "atypical and significant hardship within the correctional context." *Wilkinson*, 545 U.S. at 224 (finding a liberty interest implicated where inmates were assigned to a super-maximum security prison where almost all human contact was prohibited, communication between cells was forbidden, exercise was limited, and inmates were exposed to light 24 hours a day).

## Conclusion

Having found no basis for the claims asserted, Respondent's Motion to Dismiss or for Summary Judgment (ECF 6), construed as a Motion for Summary Judgment, shall be granted by separate Order which follows. The Petition for Writ of Habeas Corpus shall be denied, Gorbey's Motion to Proceed in Forma Pauperis shall be granted.


___3/20/2020_____           _____/s/_____
Date                                                      RICHARD D. BENNETT
                                                          UNITED STATES DISTRICT JUDGE